Hancock, Jr., J.
(concurring). I concur with the result and with the majority opinion. Indeed, under New York’s "specific subjective intent” rule (see, Matter of Westchester County Med. Ctr. [O’Connor], 72 NY2d 517, 530-531), which the parties were bound to follow, no other outcome is possible. I write separately only to express again my personal conviction (see, O’Connor, supra, at 535-539 [Hancock, Jr., J., concurring]) that "the present New York rule — requiring a factual finding of the patient’s actual intent and precluding the exercise of judgment, in her best interests and on her behalf, by her physician and family, a court or guardian” (id., at 535-536) is unworkable and should receive legislative attention. There is no question that O’Connor (supra), represents the collective view of this Court and, under the rule of stare decisis, is to be followed as the law in New York. I, of course, respect that; by no means in recommending legislative change, do I cast "clouds of doubt on the reliability” (Bellacosa, J., concurring opn, at 21) of the precedent. But, speaking for myself, I believe that the Legislature should now put New York in company with the majority of States and enact legislation to change the existing rule by replacing it with some form of substituted *19 judgment or similar rule[1] (see, id., at 537-538 [Hancock, Jr., J., concurring], and, at 540-541 [Simons, J., dissenting]).
There could be few more compelling demonstrations of the need for legislative change than the history of this prolonged struggle over the continuance of gastrointestinal feeding between a nursing home and the family of an irreversibly comatose and hopelessly ill elderly woman. Had the family of Jean Elbaum, with proper medical advice and safeguards for the rights of the patient, been permitted to make the decision in 1987 that they unanimously believed would represent her choice, the patient would not have been subjected to the continuation of unwanted and purposeless medical procedures. The time-consuming and costly litigation that ends today[2] would have been avoided._
*20 As indicated in Judge Simons’ opinion, a health care facility, when there is any doubt as to what the patient would have intended, cannot be faulted, under the "specific subjective intent” rule for declining "to discontinue treatment until the issue is legally determined” (majority opn, at 17). This is certainly true in cases where, as here, an Assistant District Attorney had announced that if life support were withdrawn from Mrs. Elbaum without court permission, the facility risked criminal prosecution. As aptly noted by the majority at the Appellate Division, in such a situation the facility is placed in a "Catch-22” (see, Grace Plaza v Elbaum, 183 AD2d 10, 16). If it discontinues treatment, it may be prosecuted; if its refusal to do so is held legally objectionable, it faces "loss of payments otherwise owed under contract” (id., at 16).
To be sure, the New York State Legislature, in enacting the health care agent and proxy law (see, Public Health Law art 29-C) has provided a helpful means for ensuring that an incompetent person’s desire to refuse artificial life support may be effectuated. But, as has been observed:
"[Wjhile it is true that the added anguish of legal uncertainty and confusion will now be removed for patients who have created a health care proxy; the law fails to provide any guidance for the families or guardians of individuals who either delay appointing an agent until it is too late or are unaware of the legal necessity for doing so. Unfortunately, in these cases, resort to the judicial system and the specific subjective intent standard it espouses will be inevitable as medical providers, fearing liability for the resulting deaths, will persist in refusing to honor the wishes of families and guardians to terminate life-sustaining procedures without prior court approval” (Note, Health Care *21 Proxies, op. cit., 57 Brooklyn L Rev 145, 176 [1991]).

. The "specific subjective intent” rule has been widely criticized as being overly restrictive (see, e.g., Note, Health Care Proxies: New York’s Attempt to Resolve the Right to Die Dilemma, 57 Brooklyn L Rev 145,-152-159 [1991]; Note, Exercising the Right to Die: A Proposal For New York, 42 Syracuse L Rev 1189, 1229-1238; Comment, In Re Storar: The Right to Die and Incompetent Patients, 43 U Pitt L Rev 1087, 1105; Note, A Patient’s Last Rights — Termination of Medical Care — an Analysis of New York’s In Re Storar, 46 Albany L Rev 1380; Note, In re O’Connor: Making Life-Sustaining Treatment Decisions on Behalf of Incompetent Patients in New York, 53 Albany L Rev 715 [1989]; Matter of Hier, 18 Mass App 200, 464 NE2d 959, review denied 392 Mass 1102, 465 NE2d 261; Conservatorship of Drabick, 200 Cal App 3d 185, 245 Cal Rptr 840).

. The litigation commenced in May 1988. Grace Plaza instituted this action (the fee action) against Mr. Elbaum for, among other things, breach of contract for his failure to pay the outstanding bill for health care services provided to his wife. A few weeks later, as his wife’s conservator, Mr. Elbaum commenced an action (the injunction action) on his wife’s behalf against Grace Plaza, seeking, among other things, to enjoin Grace Plaza from providing to Jean Elbaum any life-sustaining treatment, including nutrition and hydration, through artificial means.
In the spring of 1989, after conducting an extensive evidentiary hearing to determine Mrs. Elbaum’s wishes, Supreme Court concluded that Mr. Elbaum had not presented sufficient evidence to demonstrate that Mrs. Elbaum, when competent, had decided not to have her life sustained by artificial means, if she were ever in an irreversibly vegetative state. Also, at about the same time, Supreme Court decided the fee action, granting summary judgment to Grace Plaza and awarding it the payment sought by an order dated June 16, 1989.
Mr. Elbaum appealed the injunction action to the Appellate Division, which, in August 1989, reversed Supreme Court’s decision, finding "the evidence adduced at the hearing to be sufficiently clear and convincing to establish that * * * [Mrs. Elbaum] repeatedly indicated that she did not wish to be sustained as a 'vegetable’ ” (Elbaum v Grace Plaza, 148 AD2d 244, 254 [Elbaum I]). The Appellate Division granted the injunction, permitting the removal of Mrs. Elbaum’s feeding tube. Grace Plaza applied to the Appellate Division for a stay of the injunction and for leave to appeal to the *20 Court of Appeals, both of which motions were denied on August 21, 1989. Jean Elbaum was transferred to another facility, her feeding tube was removed and she died thereafter.
Elbaum I prompted the Supreme Court to reverse itself in the fee action to the extent of dismissing Grace Plaza’s complaint for payment. The order of dismissal was entered in February 1990. Grace Plaza appealed, and in September 1992 the Appellate Division vacated the 1990 dismissal order, reinstated Grace Plaza’s complaint and adhered to the June 1989 order, awarding Grace Plaza payment for health services to Jean Elbaum. Mr. Elbaum appealed the order to pay for life-sustaining measures that the Appellate Division had ruled were not what Mrs. Elbaum would have wanted.